## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

| | |
|---|---|
| JACQUELINE SUTTINGTON, | |
| Plaintiff, | |
| v. | Case No.: 2:24-cv-2396 |
| EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION LLC, | Jury Trial Demanded |
| Defendants. | |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE
## FAIR CREDIT REPORTING ACT

### I.    INTRODUCTION

1.  Plaintiff Jacqueline Suttington ("Plaintiff"), by and through her undersigned Counsel, brings this action to challenge the actions of defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and TransUnion LLC ("Transunion") (collectively "Defendants") with regard to erroneous reports of derogatory credit and debt information and Defendant's failure to properly investigate Plaintiff's dispute(s).

2.  Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

3.  While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4.  Unless otherwise stated, all the conduct engaged in by Defendants took place in Kansas.

5. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

6. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

7. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

8. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

9. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

10. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

11. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

12. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

## II.    JURISDICTION AND VENUE

13.    This Court has federal question jurisdiction because this case arises out of Defendant's

violations of federal law—the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

14.    Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331.

15.    Venue is proper pursuant to 28 U.S.C. § 1391 as all the events and omissions giving rise

to Plaintiff's claims occurred in Kansas.

16.    Defendants are subject to the Court's personal jurisdiction, as Defendants conduct business

within Kansas, and Defendants' conduct giving rise to this action accrued in Kansas.

17.    Plaintiff is informed and believes and thereon alleges that all acts of corporate employees

as hereinafter alleged were authorized or ratified by an officer, director or managing agent

of the corporate employers.

18.    Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein

that Defendants each were the principal, agent, or employee and in acting as such principal or

within the course and scope of such employment or agency, took some part in the acts and

omissions hereinafter set forth by reason of which Defendants are each liable to Plaintiff for

the relief prayed for herein.

## III.    PARTIES

19.    Plaintiff, Jacqueline Suttington, is a citizen of the State of Kansas.

20.    Plaintiff is an adult individual and is a "consumer" as that term is defined by 15 U.S.C. §

1681a(c).

21.    Defendant Equifax is an entity doing business in the State of Kansas.

22.    Defendant Equifax's registered agent address is: Corporation Service Company, 1100 SW

Wanamaker Rd., Ste. 103, Topeka, KS 66604.

23.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the

purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

24. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

25. Unless otherwise indicated, the use of Defendant Equifax's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Equifax.

26. Defendant Experian is an entity doing business in the State of Kansas.

27. Defendant Experian's registered agent address is: CT Corporation System, 112 SW 7th St., Ste. 3C, Topeka, KS 66603.

28. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

29. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

30. Defendant Transunion is an entity doing business in the State of Kansas.

31. Defendant Transunion's registered agent address is: The Prentice-Hall Corporation, 1100 SW Wanamaker Rd., Ste. 103, Topeka, KS 66604.

32. Defendant Transunion regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

33. Transunion is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

34. Unless otherwise indicated, the use of Defendant Transunion's name in this Complaint

includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Transunion.

## IV.   FACTUAL ALLEGATIONS

35. Plaintiff opened a credit card with JP Morgan Chase Bank, N.A. ("JPMCB") in or about September 2014 (the "JPMCB Account").

36. Unfortunately, after a series of personal and professional events, Plaintiff defaulted on her payments on the JPMCB Account and the account was eventually charged off.

37. JPMCB filed a collections lawsuit against Plaintiff in the Circuit Court of Wyandotte County, Kansas on or about June 2, 2023 in a matter styled as *JPMCB v. Jacqueline Suttington*, and assigned with case number WY-2023-LM-002908 (the "State Court Lawsuit").

38. The State Court Lawsuit was settled between Plaintiff and JPMCB through the entry of a Consent Journal Entry of Judgment on or about November 14, 2023 (the "Consent Judgment").

39. Pursuant to the terms of the Consent Judgment, JPMCB agreed that the $11,868.87 debt associated with the JPMCB Account would be settled upon receipt of twenty-three consecutive payments of $346, and one final payment of $352, made monthly to JPMCB by Plaintiff beginning October 31, 2023 and continuing thereafter until the final payment had been received (the "Settlement Payments").  The total to be paid pursuant to the Consent Judgment was $8,310.00.

40. Following entry of the Consent Judgment in the Collection Lawsuit, Plaintiff has made all required Settlement Payments on time.

41. Once all agreed payments are made, JPMCB will consider the account to be paid in full for less than the full balance.

42. Plaintiff began making her payments pursuant to the Consent Judgment in October 2023 and has continued to make timely payments thereafter.

43. After making her Settlement Payments for a number of months, Plaintiff accessed her Experian, Equifax, and Transunion credit reports on or about June 7, 2024.

44. Upon review of those reports, Plaintiff was upset to learn that Experian, Equifax, and Transunion were all failing to report the Settlement Payments Plaintiff was making to JPMCB.

45. Instead, Experian's June 7, 2024 credit report erroneously stated that $0 had been paid towards the JPMCB Account each month since Plaintiff began making the Settlement Payments.

46. Experian's reporting derogatory information was inaccurate, incomplete, and/or materially misleading in that Experian made it appear as though Plaintiff was failing to make any payments towards the JPMCB Account when in fact she was.

47. Likewise, upon viewing her June 7, 2024 Equifax credit report, Plaintiff was upset to find that the credit report erroneously reported "CO" (charge off) instead of payments in the payment history section for every month after the Collection Lawsuit had been settled, and further failed to report otherwise that any of the Settlement Payments that had been made by Plaintiff.

48. Equifax's reporting derogatory information was inaccurate, incomplete and/or materially misleading in that Equifax made it appear as though Plaintiff was failing to make any payments towards the JPMCB Account when in fact she was.

49. And finally, Plaintiff's June 7, 2024 Transunion credit report contained similar erroneous reports. Specifically, Plaintiff's June 7, 2024 Transunion credit report erroneously failed to report any of Plaintiff's monthly Settlement Payments paid towards the JPMCB

Account.

50. Transunion's reporting derogatory information was inaccurate, incomplete, and/or materially misleading in that Transunion made it appear as though Plaintiff was failing to make any payments towards the JPMCB Account when in fact she was.

## A. METRO 2 REPORTING STANDARDS

62. Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

63. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2 Format") reporting standards to assist furnishers with their compliance requirements under the FCRA.

64. The Metro 2 Format is designed to assist data furnishers and consumer reporting agencies comply with the FCRA, the Fair Credit Billing Act ("FCBA"), and the Equal Credit Opportunity Act ("ECOA").

65. Further, the Metro 2 Format is designed to allow monthly reporting of the most accurate and complete information on any given consumer's credit history.

66. On information and belief, Defendants adopted the Metro 2 Format and at all times relevant implemented the Metro 2 Format as an integral aspect of its duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

67. Despite Metro 2 Format's instructions, Defendants failed to conform to the Metro 2 Format when reporting on the JPMCB Account.

68. The FCRA requires that inaccurately reported accounts be deleted.

69. In the instant matter, the failure of Defendants to report Plaintiff's monthly payments

resulted in factually inaccurate reporting of the JPMCB Account.

70.     To this end, the adverse reporting on Plaintiff's credit reports described herein departed
        from the credit industry's own reporting standards and was not only inaccurate, but also
        materially misleading under the CDIA's Metro 2 standards as well.

**B.  THE IMPACT OF INACCURATE OR MISLEADING INFORMATION ON CONSUMER REPORTS**

71.     A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's
        eligibility for:

        i.     credit or insurance to be used primarily for personal, family, or household
               purposes;

        ii.    employment purposes; or

        iii.   any other purpose authorized under section 1681b.

72.     As a result, the information held within a consumer report impacts not only a consumer's
        credit worthiness, rating, and capacity, but also the character, general reputation, and
        personal characteristics of the consumer.

73.     A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC
        Study") found that one in five consumers had an error on at least one of their three major
        credit reports (Equifax, Equifax, and Trans Union), with some consumers experiencing
        inaccuracies that can depress credit scores by over 100 points. *See*
        https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-
        consumers-had-errors-their-credit-reports.

74.     The FTC Study found that the types of errors on consumer reports could lead to consumers
        paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-
        events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-
        reports.

C. CREDIT SCORING

75. The Fair Isaac Corporation credit risk scoring system, commonly referred to as "FICO", is the leading credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/.

76. Defendants' departures from the credit industry's own standards have caused Plaintiff to suffer from reduced FICO credit scores.

77. The Fair Isaac Corporation uses the data in consumer reports to calculate consumers' credit scores (also known as credit risk scores). *Id.* The term "credit score" is a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

78. FICO scores are calculated from five main categories of credit data in a consumer's credit report. Those categories, and their weighted values, are as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

79. Debts/amounts owed is one of the most important aspects of a consumer's credit score because it shows how the consumer has managed their finances, including what liabilities the consumer still has. Credit history is also very important, as it demonstrates how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See* https://www.transunion.com/credit-score.

80. The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's credit score.

81. Inaccurate, incomplete, and/or materially misleading credit reporting very often results in a lower FICO and other credit scoring model scores, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.

82. Incorrectly reporting that Plaintiff was making no monthly payments on the JPMCB Account made it appear as though Plaintiff was not taking affirmative steps to resolve this debt when she was, depriving her of the positive and recuperative credit impact that correct payment history reporting would provide her.

83. Since a consumer's payment history has the largest impact on a consumer's credit score, Plaintiff was deprived of the positive reporting that could have otherwise shown her payment history on the JPMCB Account and increased her credit score.

84. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score. For example, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's access to credit or the products and rates the consumer is able to secure.

85. Consistent with FTC study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

D.   **EXPERIAN**

   a.   **EXPERIAN'S INACCURATE REPORTING OF THE JPMCB ACCOUNT**

86.   Upon a review of Plaintiff's Experian credit report, dated June 7, 2024, Plaintiff discovered
that Experian was reporting $0 had been paid towards the JPMCB Account each month
since Plaintiff had entered into the Consent Judgment.

87.   This was being reported despite the fact that Plaintiff was faithfully making monthly
payments.

88.   Further, Experian was reporting a status that indicated the JPMCB Account was $9,418
past due as of May 2024, despite the fact that the Settlement Payments towards a lower
debt amount were being made as agreed and the JPMCB Account's status had changed
accordingly.

89.   It was therefore inaccurate, incomplete, and/or materially misleading for Experian to report
the JPMCB Account as described herein.

90.   Upon seeing these inaccurate reportings regarding the JPMCB Account on her Experian
credit report, Plaintiff was confused about the status of debt, which caused her to suffer
from frustration, anxiety, stress, and emotional distress.

   b.   **PLAINTIFF'S DISPUTE TO EXPERIAN**

91.   On or after June 25, 2024, Plaintiff disputed Experian's reporting of the JPMCB Account
pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect
information (the "Experian Dispute").

92.   The Experian Dispute sent to Experian requested the above inaccurate, incomplete, and/or
materially misleading information be updated, modified, or corrected as to the JPMCB
Account.

93.   Enclosed with the Experian Dispute were copies of the Petition and Consent Judgment

from the Collection lawsuit, as well as proof of Plaintiff's Settlement Payments.

94. Experian was required to conduct a reinvestigation into the JPMCB Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

95. Experian was required to send notice of the Experian Dispute to JPMCB pursuant to 15 U.S.C. § 1681i(a)(2).

96. A reasonable investigation by Experian would have indicated that it was reporting the JPMCB Account inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Experian Credit Report.

97. Instead, Experian continued to report the JPMCB Account in an inaccurate, incomplete, and/or materially misleading way.

c. **THE CONTINUED INACCURATE REPORTING OF THE JPMCB ACCOUNT ON PLAINTIFF'S EXPERIAN CREDIT REPORT**

98. In a subsequent Experian credit report dated August 29, 2024 following Plaintiff's dispute, Experian failed to remove inaccurate, incomplete, and/or materially misleading information regarding the JPMCB Account from Plaintiff's Experian Credit Report.

99. Instead, in the August 29, 2024 Experian Credit Report, Experian continued to report inaccurate, incomplete, and materially misleading information on the JPMCB Account by failing to include pertinent information regarding Plaintiff's payment history.

100. Specifically, Experian and JPMCB continued to report $0 had been paid each month since Plaintiff began her payments pursuant to the Consent Judgment, and they continued to report the JPMCB Account as past due.

101. Experian's reporting was inaccurate because the result of its reporting was to make it appear as if Plaintiff was failing to make monthly payments on the JPMCB Account when she was in fact making payments.

102. Additionally, Experian's reporting created the appearance that the remaining debt associated with the JPMCB Account was much higher than Plaintiff understood it to be.

103. These reportings caused Plaintiff confusion regarding the status of the JPMCB Account on her Experian credit report, and stress, anxiety, and emotional distress over the fact that her efforts to resolve the JPMCB Account had been made in vain and that she still owed much more than she actually did on the Consent Judgment.

104. Instead, Experian made the same inaccurate, incomplete, and/or materially misleading reportings described above, along with a statement: $16,883 written off.

**E.  EQUIFAX**

    a.  **EQUIFAX'S INACCURATE REPORTING OF THE JPMCB ACCOUNT**

105. Upon a review of Plaintiff's Equifax credit report, dated June 7, 2024, Plaintiff discovered that Equifax was failing to report any of her Settlement Payments made towards the JPMCB Account in each month since Plaintiff had entered into the Consent Judgment, and that the JPMCB Account carried a balance and past due balance in the amount of $9,418.

106. This was being reported despite the fact that Plaintiff was faithfully making monthly payments, and despite the fact that the Settlement Payments towards a lower debt amount were being made as agreed and the JPMCB Account's status had changed accordingly.

107. It was therefore inaccurate, incomplete, and/or materially misleading for Equifax to report the JPMCB Account as described herein.

108. Upon seeing these inaccurate reportings regarding the JPMCB Account on her Equifax credit report, Plaintiff was confused about the status of debt, which caused her to suffer from frustration, anxiety, stress, and emotional distress.

    b.  **PLAINTIFF'S DISPUTE TO EQUIFAX**

109. On or after June 25, 2024, Plaintiff disputed Equifax's reporting of the JPMCB Account

pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect information (the "Equifax Dispute").

110. The Equifax Dispute sent to Equifax requested the above inaccurate, incomplete, and/or materially misleading information be updated, modified, or corrected as to the JPMCB Account.

111. Enclosed with the Equifax Dispute were copies of the Petition and Consent Judgment from the Collection lawsuit, as well as proof of Plaintiff's Settlement Payments.

112. Equifax was required to conduct a reinvestigation into the JPMCB Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

113. Equifax was required to send notice of the Equifax Dispute to JPMCB pursuant to 15 U.S.C. § 1681i(a)(2).

114. A reasonable investigation by Equifax would have indicated that it was reporting the JPMCB Account inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Equifax Credit Report.

115. Instead, Equifax continued to report the JPMCB Account in an inaccurate, incomplete, and/or materially misleading way.

   c. **THE CONTINUED INACCURATE REPORTING OF THE JPMCB ACCOUNT ON PLAINTIFF'S EQUIFAX CREDIT REPORT**

116. In a subsequent Equifax credit report dated August 29, 2024, Equifax failed to remove or correct the inaccurate, incomplete, and/or materially misleading information regarding the JPMCB Account from Plaintiff's Equifax Credit Report.

117. Instead, in the August 29, 2024 Equifax Credit Report, Equifax continued to report inaccurate, incomplete, and/or materially misleading information on the JPMCB Account by failing to include pertinent information regarding Plaintiff's payment history.

118. Specifically, Equifax continued to report that Plaintiff was past due and likewise failed to report any of Plaintiff's Settlement Payments.

119. Equifax's reporting was inaccurate because the result of its reporting was to make it appear as if Plaintiff was failing to make monthly payments on the JPMCB Account when she was in fact making payments.

120. Additionally, Equifax's reporting created the appearance that the remaining debt associated with the JPMCB Account was much higher than Plaintiff understood it to be.

121. These reportings caused Plaintiff confusion regarding the status of the JPMCB Account on her Equifax credit report, and stress, anxiety, and emotional distress over the fact that her efforts to resolve the JPMCB Account had been made in vain and that she still owed much more than she actually did on the Consent Judgment.

## F.   TRANSUNION

### a.   TRANSUNION'S INACCURATE REPORTING OF THE JPMCB ACCOUNT

122. Upon a review of Plaintiff's Transunion credit report, dated June 7, 2024, Plaintiff discovered that Transunion was reporting that the JPMCB Account was past due in the amount of $9,418, and that Transunion was further failing to report any of Plaintiff's Settlement Payments.

123. This was being reported despite the fact that Plaintiff was faithfully making monthly payments.

124. It was therefore inaccurate, incomplete, and/or materially misleading for Transunion to report the JPMCB Account as described.

125. Upon seeing these inaccurate reportings regarding the JPMCB Account on her Transunion credit report, Plaintiff was confused about the status of debt, which caused her to suffer from frustration, anxiety, stress, and emotional distress.

b.   **PLAINTIFF'S DISPUTE TO TRANSUNION**

126. On or after June 25, 2024, Plaintiff disputed Transunion's reporting of the JPMCB Account pursuant to 15 U.S.C. § 1681i by notifying Transunion, in writing, of the incorrect information (the "Transunion Dispute").

127. The Transunion Dispute sent to Transunion requested the above inaccurate, incomplete, and/or materially misleading information be updated, modified, or corrected as to the JPMCB Account.

128. Enclosed with the Transunion Dispute were copies of the Petition and Consent Judgment from the Collection lawsuit, as well as proof of Plaintiff's Settlement Payments.

129. Transunion was required to conduct a reinvestigation into the JPMCB Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

130. Transunion was required to send notice of the Transunion Dispute to JPMCB pursuant to 15 U.S.C. § 1681i(a)(2).

131. A reasonable investigation by Transunion would have indicated that it was reporting the JPMCB Account inaccurately, incompletely, and/or in a materially misleading way on Plaintiff's Transunion Credit Report.

132. Instead, Transunion continued to report the JPMCB Account in an inaccurate, incomplete, and/or materially misleading way.

c.   **THE CONTINUED INACCURATE REPORTING OF THE JPMCB ACCOUNT ON PLAINTIFF'S TRANSUNION CREDIT REPORT**

133. In a subsequent Transunion credit report dated August 29, 2024, Transunion failed to remove or correct the inaccurate, incomplete, and/or materially misleading information regarding the JPMCB Account from Plaintiff's Transunion Credit Report.

134. Instead, in the August 29, 2024 Transunion Credit Report, Transunion continued to report

inaccurate, incomplete, and/or materially misleading information on the JPMCB Account by failing to report any of Plaintiff's Settlement Payments, and by reporting the JPMCB Account was past due in the amount of $8,368.

135. Transunion continued to report that Plaintiff was past due and likewise failed to report any of Plaintiff's Settlement Payments.

136. Transunion's reporting was inaccurate because the result of its reporting was to make it appear as if Plaintiff was failing to make monthly payments on the JPMCB Account when she was in fact making payments.

137. Additionally, Transunion's reporting created the appearance that the remaining debt associated with the JPMCB Account was much higher than Plaintiff understood it to be.

138. These reportings caused Plaintiff confusion regarding the status of the JPMCB Account on her Transunion credit report, stress, anxiety, and emotional distress over the fact that her efforts to resolve the JPMCB Account had been made in vain and that she still owed much more than she actually did on the Consent Judgment.

### G.  DEFENDANTS' VIOLATIONS OF THE FCRA AND PLAINTIFF'S DAMAGES

139. Omitting material information from a tradeline provides the basis for a violation of the FCRA.

140. It is inaccurate, incomplete, and/or materially misleading to report that no monthly payments are being paid each month on an account when the consumer is in fact making $346 monthly payments.

141. It is inaccurate, incomplete, and/or materially misleading to report than an account is past due when payments are being faithfully made.

142. As evidenced by Equifax, Experian, and Transunion's reporting of inaccurate, incomplete, and/or materially misleading payment history of the JPMCB Account after being advised

otherwise, Equifax, Experian, and Transunion failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

143.  As evidenced by the inaccurate re-reporting after Plaintiff sent Equifax, Experian, and Transunion detailed disputes identifying the incorrect information related to the JPMCB Account, Transunion, Equifax, and Experian, upon receipts of Plaintiff's disputes, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

144.  Equifax, Experian, and Transunion failed to review all relevant information provided by Plaintiff in her disputes, as required by and in violation of 15 U.S.C. § 1681i.

145.  Due to Equifax, Experian, and Transunion's failure to reasonably investigate, Equifax, Experian, and Transunion further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

146.  Equifax, Experian, and Transunion's continued inaccurate and negative reporting of the JPMCB Account in light of their knowledge of the actual errors was willful. Plaintiff is, accordingly, eligible for statutory damages under the FCRA.

147.  Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of section 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

148.  Based upon Equifax, Experian, and Transunion's knowledge that Plaintiff was making monthly payments towards to the JPMCB Account pursuant to the terms of the Consent Judgment, even if Equifax, Experian, and Transunion could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their

obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i.

149.   Also as a result of Equifax, Experian, and Transunion's continued incorrect and negative reporting, Plaintiff has suffered actual damages, including, without limitation, fear of credit denials, out-of-pocket expenses in challenging Equifax, Experian, and Transunion's inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, emotional distress, and actual credit denials.

150.   By reporting inaccurate, incomplete, and/or materially misleading account information, Equifax, Experian, and Transunion's acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

151.   The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than she otherwise would.

152.   Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiff alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *Binns v. Ocwen Loan Servicing, LLC*, No. 14-01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to Plaintiff's credit scores and reputations were considered intangible harms"); *Rothman v. U.S. Bank Nat'l Ass'n,* No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014

WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *Green v. RentGrow, Inc*., No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiff's allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); *Coulbertson v. Equifax Info. Sols., Inc*., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through his claim that his credit score suffered as a result of the credit report she disputes").

153. Creating the false impression that Plaintiff was not attending to her debts in a responsible manner created and/or exacerbated a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit report that is engaged in judgment-based lending.

154. Plaintiff's Equifax, Experian, and Transunion credit reports were published to third parties while the inaccurate, incomplete, and/or materially misleading information discussed in this Complaint was present on each Defendants' respective reports.

155. Instead of those third parties seeing the positive payment history of Plaintiff on the JPMCB Account, those third parties were misinformed about Plaintiff's fidelity to her payments on the JPMCB Account.

156. Equifax, Experian, and Transunion thus caused a defamation-type harm upon Plaintiff. By inaccurately reporting account information after notice and confirmation of its errors, Equifax, Experian, and Transunion failed to take the appropriate measures as required

under 15 U.S.C. § 1681i.

## FIRST CAUSE OF ACTION
### The Fair Credit Reporting Act
### 15 U.S.C. § 1681 *et seq*. (FCRA)

157.  Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

158.  The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

159.  Equifax, Experian, and Transunion's violations of the FCRA as alleged above, include, but are not limited to 15 U.S.C. §§ 1681e(b), and/or 1681i.

160.  As a result of each negligent violation of the FCRA, Plaintiff is entitled to actual damages from Equifax, Experian, and Transunion, for each of their individual harms caused upon Plaintiff, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2).

161.  As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, for each of their individual harms caused upon Plaintiff, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs, from each Defendant, pursuant to 15 U.S.C. §1681n(a)(3).

## Request for Jury Trial

162.  Plaintiff is entitled to, and demands, a trial by jury.

## Prayer For Relief

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Equifax, Experian, and Transunion:

1.  A declaratory judgment that Equifax, Experian, and Transunion's actions each violated the

FCRA;

2.    Plaintiff's actual damages from each Defendant for harms resulting from the FCRA;

3.    Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;

4.    Punitive damages against each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5.    An award of costs of litigation and reasonable attorney's fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) and/or 15 U.S.C. § 1681n(a)(3); and

6.    Any other relief the Court may deem just and proper.

Dated:  _____08/30/2024_____          Respectfully submitted,

                                         /s/ James R. Crump_____
                                         James R. Crump #25363
                                         Ryan M. Callahan #78704
                                         **Callahan Law Firm, LLC**
                                         222 W. Gregory Blvd., Suite 210
                                         Kansas City, MO 64114-1138
                                         Ph: 816-822-4041
                                         james@callahanlawkc.com
                                         ryan@callahanlawkc.com
                                         Attorneys for Plaintiff